not-cred-final cash collateral hrng v2 12-20-04

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| **SUBURBAN DODGE OF** | ) | Case No. 04 B 42931 |
| **BERWYN, INC.** D/B/A SUBURBAN | ) | |
| DODGE-ISUZU-SUZUKI, AN ILLINOIS | ) | Hon. Eugene R. Wedoff |
| CORPORATION, | ) | |
| | ) | Date: January 6, 2005 |
| Debtor. | ) | Time: 10:00 a.m. |

## NOTICE OF FINAL HEARING ON MOTION FOR USE OF CASH
## COLLATERAL AND LIMITED DEBTOR IN POSSESSION FINANCING

**PLEASE TAKE NOTICE** that, on November 24, 2004, Suburban Dodge of Berwyn, Inc. d/b/a Suburban Dodge-Isuzu-Suzuki, an Illinois Corporation, debtor and debtor in possession (the "Debtor"), presented the Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Debtor in Possession Financing (the "Cash Collateral/DIP Financing Motion"). A copy of the Cash Collateral/DIP Financing Motion, without Exhibits A and B (loan documents and UCC statements), is enclosed. Copies of Exhibits A and B may be obtained by contacting Debtor's counsel.

**PLEASE TAKE FURTHER NOTICE** that on November 24, 2004, the Honorable Eugene R. Wedoff, Chief Bankruptcy Judge, entered the Stipulated Interim Order for Authorization of the Use of Cash Collateral and Providing Adequate Protection Under 11 U.S.C. § 363(e) and Limited Post-Petition Financing Under 11 U.S.C. § 364 (the "Interim Order"). A copy of the Interim Order is enclosed.

**PLEASE TAKE FURTHER NOTICE** that a **final hearing on the Cash Collateral/DIP Financing Motion and to consider the entry of a final order granting the relief requested therein** (the "Final Order") shall be held on **January 6, 2005, at 10:00 a.m.**, before the Honorable Eugene R. Wedoff in Courtroom 744, Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois 60604.

**PLEASE TAKE FURTHER NOTICE** that Daimler Chrysler Services N.A., LLC may request at the final hearing that some or all of the provisions of the Interim Order as originally proposed, that were stricken or modified by the Bankruptcy Court, be included in the Final Order

**PLEASE TAKE FURTHER NOTICE that any party in interest objecting to the entry of the Final Order must file a written objection with the Clerk of the Bankruptcy Court, Room 710, Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois 60604, no later than 4:00 p.m. on January 3, 2005 and serve copies, in a manner so as to be received on or before such date, upon:** (i) Gesas, Pilati, Gesas, and Golin, Ltd., 53 West Jackson Boulevard, Suite 528, Chicago, Illinois 60604, Attn: Michael L. Gesas and David A. Golin, counsel for the Debtor, (ii) Thompson Coburn, LLP, One U.S. Bank Plaza, St. Louis, Missouri 63101, Attn: Mark V. Bossi and Brian W. Hockett, counsel for Daimler Chrysler Financial Services LLC, and (iii) The Office of the United States Trustee, 227 West Monroe Street, Suite 3350, Chicago, Illinois 60606, Attn: Stephen G. Wolfe.

DATE: December 22, 2004

MICHAEL L. GESAS (06186924)
DAVID A. GOLIN (06180517)
GESAS, PILATI, GESAS AND GOLIN, LTD.
53 West Jackson Blvd., Suite 528
Chicago, Illinois 60604
(312) 726-3100

mot-DIP financing cash collateral 11-22-04

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | **Chapter 11** |
|  | ) |  |
| **SUBURBAN DODGE OF** | ) | **Case No. 04 B 42931** |
| **BERWYN, INC. D/B/A SUBURBAN** | ) |  |
| **DODGE-ISUZU-SUZUKI, AN ILLINOIS** | ) | **Hon. Eugene R. Wedoff** |
| **CORPORATION,** | ) |  |
|  | ) | **Date: November 24, 2004** |
| **Debtor.** | ) | **Time: 10:00 a.m.** |

RECEIVED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

NOV 2 3 2004

KENNETH S. GARDNER, CLERK
PUBLIC SERVICE COUNTER

## MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND DEBTOR IN POSSESSION FINANCING

Suburban Dodge of Berwyn, Inc. d/b/a Suburban Dodge-Isuzu-Suzuki, an Illinois Corporation, debtor and debtor in possession ("Debtor"), by its attorneys, pursuant to 11 U.S.C. §§ 105, 362, 363 and 364 and Rule 4001 of the Federal Rules of Bankruptcy Procedure, respectfully requests that this Court enter an interim order and after further notice and hearing a final order: (a) authorizing Debtor's use of the cash collateral of Daimler Chrysler Services North America LLC ("DCSNA"), (b) authorizing Debtor to obtain debtor in possession financing from DCSNA to finance trade in vehicles, and (c) granting DCSNA adequate protection for Debtor's use of cash collateral and its debtor in possession financing. In support of this Motion, Debtor states as follows:

### Introduction

1.     On November 18, 2004, Debtor filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Code").

2.     Pursuant to the provisions of sections 1107 and 1108 of the Code, Debtor remains in possession of its assets and is authorized to operate its business and manage its affairs as a debtor in possession.

3.    No creditors' committee has yet been appointed in these cases. No trustee or examiner has been appointed.

4.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.    The statutory predicates for the relief requested herein are sections 105, 362, 363, 364, 1107 and 1108 of the Code.

### Debtor's Business Operations

6.    Debtor is an automobile dealership in the business of selling new and used vehicles and vehicle parts and accessories and providing repair and maintenance service.

### Pre-Petition DCSNA Financing

7.    DCSNA provided wholesale floor plan financing to Debtor whereby DCSNA financed and Debtor acquired virtually all of its inventory of motor vehicles and parts. The wholesale floor plan financing was provided pursuant to various financing agreements including, without limitation, that certain Master Loan and Security Agreement dated February 8, 2002 (the "MLSA").

8.    DCSNA provided capital financing to Debtor whereby DCSNA provided funds for the operation of the Debtor's automobile dealership. The capital financing was provided pursuant to various financing agreements including that certain Capital Loan Addendum to Master Loan and Security agreement dated February 8, 2002, and that certain Capital Note date January 23, 2004, and that certain Addendum to Capital Note dated January 23, 2004 (collectively, the "Capital Loan Documents").

9.    The financing agreements, including, without limitation, the MLSA and the Capital Loan Documents, are referred to collectively herein as the "Loan and Security

2

Documents". Under the terms of these Loan and Security Documents, DCSNA has acquired a security interest in the Collateral. Copies of the Loan and Security Documents are attached hereto collectively as Exhibit A.[1]

10.    DCSNA perfected its security interest by making all appropriate filings with the Secretary of State of the State of Illinois. Copies of said financing statements are attached hereto collectively as Exhibit B.[2]

11.    As of the Petition Date, Debtor owed DCSNA a total of $5,980,101.23 representing $4,429,166.23 for new motor vehicle financing; $722,185.00 in used motor vehicle financing; $828,750.00 in capital financing (the "Existing Indebtedness").

### Debtor's Need for Use of Cash Collateral

12.    Without the continued use of DCSNA's cash collateral, Debtor would be unable to continue operations. Debtor's financial condition is such that it cannot continue to operate long-term. Debtor intends to sell virtually all of its assets, subject to Court approval, on an expedited basis.

13.    Section 363(c)(2) of the Code enables a debtor in possession to use cash collateral only if an entity with an interest in such cash collateral consents, or the court authorizes such use.

14.    DCSNA has agreed to permit Debtor to use cash collateral, for a period of sixty days (through January 18, 2004) in accordance with a budget (the "Budget"), on a limited basis, upon certain terms and conditions, including the provision of adequate protection. Accordingly, Debtor and DCSNA wish to establish the basis upon which Debtor may:

(i)    Use cash collateral of DCSNA;

---

[1] The Loan and Security Documents are voluminous and for that reason have been attached only to the original and copies of this motion filed with the Court.
[2] The Financing Statements are voluminous and for that reason have been attached only to the original and copies of this motion filed with the Court.

    (ii)     Sell in the ordinary course of business certain inventory in which DCSNA holds a perfected security interest;

    (iii)    Segregate, sequester and pay over to DCSNA the net proceeds of DCSNA's cash collateral; and

    (iv)    provide for adequate protection of DCSNA's security interest in the collateral used by Debtor.

### Debtor's Need for DIP Financing

15.    DCSNA has also agreed, at its option, to provide debtor in possession financing for the purpose of financing a trade in vehicle or a special order. No debtor in possession financing for Debtor's purchase of new vehicles is being requested.

### The Interim Order

16.    A proposed Interim Order Authorizing Use of Cash Collateral and Debtor in Possession Financing (the "Interim Order") is attached hereto as Exhibit C.

17.    By this Motion, Debtor requests the immediate entry of the Interim Order. Debtor further requests that this Court set a final hearing on the Motion, pursuant to Rule 4001(c) of the Bankruptcy Rules, for entry of a Final Order Authorizing Use of Cash Collateral and Debtor in Possession Financing (the "Final Order").

18.    The only provisions set forth in Local Rule 4001-2(A)(2) that are contained in the Interim Order are the type in subparagraph (i):

    (i)    provisions that grant lender expedited relief from the automatic stay in § 362 of the Bankruptcy Code or relief from the automatic stay without further order of the Court (See paragraph 11 of the Interim Order).

The Interim Order provides in paragraph 11:

DCSNA may file and serve Debtor and counsel for Debtor, via fax, with a Declaration of Default and a proposed *ex parte* Order for Relief from the Automatic Stay, Debtor shall have three (3) business days from the date counsel for Debtor is served via fax, with the Declaration of Default, in which to file and serve counsel for DCSNA, via

fax, with a Declaration to the effect that Debtor was not in default or that Debtor cured the default within three (3) business days of service of Notice of Default. Said Declaration shall include documentary evidence, establishing or tending to establish that Debtor was not in default, or that Debtor cured the default within three (3) business days of service of the Notice of Default. If Debtor fails to file such a Declaration, the Court shall sign the *ex parte* order for Relief from Stay without further notice of Court proceedings. If Debtor does file a Declaration to the effect that Debtor was not in default or that Debtor cured the default within a timely fashion, then there shall be a hearing on twenty-four (24) hour notice. At such hearing, relief from the Automatic Stay shall be granted to DCSNA unless Debtor establishes that it was not in default or that Debtor cured the default within three (3) business days of service, via fax, of the declaration of default as provided above.

DCSNA has advised Debtor that such provisions are necessary due to Debtor's past payment history.

19.    In the Interim Order, Debtor and DCSNA have stipulated as to several matters. Two of these matters relate to provisions of the type in subparagraphs (b) and (c) in Local Rule 4001-2(A)(2), namely that:

- The claims of DCSNA for Existing Indebtedness are secured claims within the meaning of 11 U.S.C. § 506 to the extent of principal, interest thereon at the rate set forth in the existing loan documents, costs, attorneys fees, and out-of-pocket expenses incurred and to be incurred by DCSNA in connection with this case. (See paragraph K of the Interim Order)

- No cash collateral or other collateral of DCSNA may be used to pay, or be charged pursuant to section 506(c) of the Bankruptcy Code or other applicable law, for any costs or expense of preserving or disposing of any of DCSNA's Collateral, or for any expenses of administration of the case. The provisions of this paragraph shall not apply to any subsequently appointed Chapter 11 Trustee or Chapter 7 Trustee as to any period of time after which the Debtor is prohibited from using cash collateral. (See paragraph L of the Interim Order)

20.    The Interim Order contains, *inter alia*, the following additional provisions:

- Debtor shall establish a new cash collateral account.

- Debtor shall deposit all proceeds of the sale of a motor vehicle into the account.

- Debtor shall pay to DCSNA the amount financed on the vehicle.

- Upon payment to DCSNA, Debtor may use balance of sale proceeds for the purposes and in the amounts set forth in the Budget.

- If Debtor accepts a trade-in as part of the sale of a vehicle, DCSNA shall be granted a lien pursuant to 11 U.S.C. § 364(c) and 11 U.S.C. § 507(b) on any such trade-in vehicle, and, at DCSNA's option, DCSNA may finance any trade-in vehicle, if requested to do so by Debtor.

- Various terms and conditions for fleet sales, dealer trades/sales and/or auto broker sales.

- Various terms and conditions for wholesale or auction sales.

- Various terms and conditions for sale of automotive parts.

- Milestones for the sale of substantially all of Debtor's assets (dates to be filled in.)

- As Adequate protection for Debtor's use of cash collateral, DCSNA is granted (i) liens and security interests junior to properly perfected liens and security interests in all pre-petition assets of the Debtor, (ii) liens and security interests junior to properly perfected liens and security interests in all pre-petition assets of the Debtor, and (iii) claims entitled to priority over any and all administrative expense claims of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code except that such claim shall be subject to all costs and expenses permitted under 28 U.S.C. § 1930.  Said liens and security interests shall be valid, perfected, enforceable and effective as of the Petition Date without any further action by Debtor or DCSNA.

- Neither Debtor nor Debtor's principals shall file or allow to be filed a motion under section 364(d) of the Code or other applicable law, seeking to obtain credit or incur debt secured by a senior or equal lien on DCSNA's collateral.

- Debtor shall be deemed to be in default if Debtor fails to comply with any of the terms and conditions of the Interim Order.  In the event of a default, counsel for DCSNA shall notify, via fax, Debtor and its counsel, and if the default is not cured within one business day, Debtor's use of cash collateral shall be suspended and DCSNA may proceed to obtain expedited relief from the stay.

## Final Order

21.     In the Final Order, all items stipulated by Debtor and DCSNA in the Interim Order shall be set forth as findings of fact by the Court. In all other material respects, the Final Order shall be the same as the Interim Order.

22.     The Debtor believes that the terms and provisions of the Interim Order and Final Order are the best that the Debtor can obtain under the circumstances. The Debtor believes that its use of cash collateral, authorized by the Interim Order and Final Order, will enable it to, among other things, (a) avoid the cessation of its operations as active going concerns, (b) maintain the continuity and stability of its business operations pending a sale and to provide appropriate assurances of that to vendors and customers, and (c) maximize the value of its business and properties.

23.     Accordingly, Debtor believes that granting this Motion is in the best interests of its estate, creditors and all other parties with a stake in the outcome of this case.

24.     Bankruptcy Rule 4001(b) governs the procedures for obtaining authorization to use cash collateral and provides, in relevant part: The Court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

25.     Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization to obtain postpetition financing and provides, in relevant part: The Court may commence a final hearing on a motion for authority to obtain credit no earlier that 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period

7

expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid

immediate and irreparable harm to the estate pending a final hearing.

26.    If the Debtor's access to cash is discontinued, its operations will cease, it will be

unable to pay operating expenses and operate its business in an orderly manner, thereby severely

impairing the value of its assets and its ability to effectuate a going concern sale.

27.    Accordingly, Debtor believes that it and its estate will suffer immediate and

irreparable harm unless it is immediately authorized to use cash collateral and obtain credit, if

necessary, on terms and conditions set forth in the Interim Order.

## Notice With Respect to Interim Order

28.    One days' notice of this Motion, along with a copy of the proposed Interim Order,

has been given by messenger delivery or facsimile transmission to (i) the United States Trustee

for the Northern District of Illinois, (ii) counsel to DCSNA, (iii) Debtor's known secured

creditors, (iv) District Counsel for the Internal Revenue Service and (v) the Debtor's 20 largest

unsecured creditors.

29.    Debtor submits that under the circumstances, no further notice of the hearing on

the Interim Order is necessary and requests that any further notice be dispensed with and waived.

## Notice with Respect to Final Order

30.    Debtor requests that it be authorized to serve: (a) a copy of the signed Interim

Order, (b) a copy of the proposed Final Order, and (c) a Notice of the final hearing and the date

for filing objections, if any, mail upon (i) the United States Trustee; (ii) DCSNA and its counsel;

(iii) those persons who have requested notice in this Case, (iv) the District Counsel for the

Internal Revenue Service, and (v) the Debtor's 20 largest unsecured creditors.  The Debtor shall

serve such papers by overnight mail at least 15 days prior to the hearing.  The Debtor further

requests that the Court consider such notice of the final hearing to be sufficient notice under

Bankruptcy Rule 4001.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief as

requested above.

SUBURBAN DODGE OF BERWYN, INC.
D/B/A SUBURBAN DODGE-ISUZU-
SUZUKI, DEBTOR IN POSSESSION


By: _____
One of Its Attorneys

MICHAEL L. GESAS (06186924)
DAVID A. GOLIN (06180517)
GESAS, PILATI, GESAS AND GOLIN, LTD.
53 West Jackson Boulevard, Suite 528
Chicago, IL  60604
(312) 726-3100

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | **Chapter 11** |
| | ) | |
| **SUBURBAN DODGE OF** | ) | **Case No. 04 B 42931** |
| **BERWYN, INC. D/B/A SUBURBAN** | ) | |
| **DODGE-ISUZU-SUZUKI, AN ILLINOIS** | ) | **Hon. Eugene R. Wedoff** |
| **CORPORATION,** | ) | |
| | ) | **Date: November 24, 2004** |
| **Debtor.** | ) | **Time: 10:00 a.m.** |

### STIPULATED INTERIM ORDER FOR AUTHORIZATION OF THE USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION UNDER 11 U.S.C. § 363(e) AND LIMITED POST-PETITION FINANCING UNDER TO 11 U.S.C. § 364

This matter is before the Court pursuant to the *Motion for Entry of Order Authorizing Use of Cash Collateral and Debtor in Possession Financing* (the "Motion") submitted by Suburban Dodge of Berwyn, Inc. d/b/a Suburban Dodge-Isuzu-Suzuki, debtor and debtor in possession ("Debtor"); and Debtor and DaimlerChrysler Services North America LLC ("DCSNA") stipulate and agree to the following:

A.      Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on November 18, 2004 (the "Petition Date"). Debtor is acting as a Debtor-in Possession and no trustee has been appointed.

B.      DCSNA is a pre-petition creditor of Debtor holding a claim secured by Debtor's personal property, including without limitation all vehicle and parts inventory, furniture, fixtures and equipment, accounts receivable, general intangibles and the proceeds of all the foregoing (the "Collateral").

C.    This Court has jurisdiction to hear and determine the matter at bar pursuant to 28

U.S.C. §§ 157(b)(1), 157(b)(2)(M) and 1334, 11 U.S.C. § 363(e) and Fed. R. Bankr. P. 4001(d).

This is a core proceeding.

D.    Debtor is an automobile dealership in the business of selling new and used vehicles

and vehicle parts and accessories and providing repair and maintenance service.

E.    DCSNA provided wholesale floor plan financing to Debtor whereby DCSNA

financed and Debtor acquired virtually all of its inventory of motor vehicles and parts.  The

wholesale floor plan financing was provided pursuant to various financing agreements including,

without limitation, that certain Master Loan and Security Agreement dated February 8, 2002 (the

"MLSA").

F.    DCSNA provided capital financing to Debtor whereby DCSNA provided funds for

the operation of the Debtor's automobile dealership. The capital financing was provided pursuant

to various financing agreements including that certain Capital Loan Addendum to Master Loan

and Security Agreement dated February 8, 2002, and that certain Capital Note dated January 23,

2004, and that certain Addendum to Capital Note dated January 23, 2004 (collectively, the

"Capital Loan Documents").

G.    The financing agreements, including, without limitation, the MLSA and the Capital

Loan Documents, are referred to collectively herein as the "Loan and Security Documents".

Under the terms of these Loan and Security Documents, DCSNA has acquired a security interest

in the Collateral.  True and accurate copies of the Loan and Security Documents are attached to

the Motion.  DCSNA perfected its security interest by making all appropriate filings with the

Secretary of State of the State of Illinois.  True and accurate copies of said financing statements

are attached to the Motion.

H.    As of the Petition Date, Debtor owed DCSNA a total of $5,980,101.23 representing $4,429,166.23 for new motor vehicle financing; $722,185.00 in used motor vehicle financing; $828,750.00 in capital financing (the "Existing Indebtedness").

I.    Without the continued use of DCSNA's cash collateral, Debtor would be unable to continue operations. Debtor's financial condition is such that it cannot continue to operate long-term, and Debtor has expressed that it is its intention to sell virtually all of its assets, subject to Court approval, on an expedited basis.

J.    DCSNA is willing to permit Debtor to use cash collateral, on a limited basis, upon certain terms and conditions, and upon the provision of adequate protection. Accordingly, Debtor and DCSNA wish to establish the basis upon which Debtor may:

(i)    Use cash collateral of DCSNA;

(ii)    Sell in the ordinary course of business certain inventory in which DCSNA holds a perfected security interest;

(iii)    Segregate, sequester and pay over to DCSNA the net proceeds of DCSNA's cash collateral;

(iv)    Provide for adequate protection of DCSNA's security interest in the collateral utilized by the Debtor; and

(v)    Establish a basis upon which Debtor may obtain post-petition wholesale financing from DCSNA.

K.    **The debtor stipulates that the claims of DCSNA for Existing Indebtedness are secured claims within the meaning of section 506 of the Bankruptcy Code to the extent of principal, interest thereon at the rate set forth in the existing loan documents, costs,**

attorneys fees, and out-of-pocket expenses incurred and to be incurred by DCSNA in connection with this case.

L.      No cash collateral or other collateral of DCSNA will be used to pay, or be charged pursuant to section 506(c) of the Bankruptcy Code or other applicable law, for any costs or expense of preserving or disposing of any of DCSNA's Collateral, or for any expenses of administration of the case.  The provisions of this paragraph shall not apply to any subsequently appointed Chapter 11 Trustee or Chapter 7 Trustee as to any period of time after which the Debtor is prohibited from using cash collateral.

WHEREFORE, after considering the matter and reviewing the record as a whole and otherwise being fully advised in the premises, including the foregoing stipulations ("Stipulation"), the Court hereby enters, the following Order:

## Use of Cash Collateral

1.      Subject to the terms and conditions of this Order, Debtor is hereby authorized to use cash and cash equivalents, pursuant to, and as defined by, 11 U.S.C. § 363, whenever acquired, in which the estate and an entity other than the estates have an interest, including the proceeds, products, offspring, rents or profits of property (hereafter "Cash Collateral") on an interim basis, pending a final hearing, in its ordinary course of business in such amounts as are necessary to avoid immediate and irreparable harm and to facilitate the continued operation of the Debtor's business.  Notwithstanding the foregoing, except as otherwise agreed to by DCSNA in writing, Debtor's use of cash collateral may not exceed the amounts set forth in the Budget attached hereto as Exhibit A, with Debtor's disbursements in each cost and expense category not to exceed the amounts set forth for such categories on Exhibit A.

2.      The Debtor may use DCSNA's cash collateral in the ordinary course of its business on the following terms and conditions:

A.      RETAIL SALE OF MOTOR VEHICLES IN WHICH DCSNA RETAINS A SECURITY INTEREST

Upon the sale of a motor vehicle in which DCSNA retains a security interest, Debtor is hereby authorized to use that portion of DCSNA's cash collateral which either (a) represents the difference between the amount of financing (*i.e.*, the amount shown as the current balance on DCSNA's statements to Debtor) and the amount for which the vehicle is sold by Debtor, or (b) if DCSNA has not provided any financing with respect to the motor vehicle, represents 20% of the amount for which the vehicle is sold by Debtor, net of salesmen's commissions, sales taxes and title expenses, subject in either event to the following terms and conditions:

i.      All proceeds of the sale of a motor vehicle, including, but not limited to, any down payment, shall be placed into a DCSNA Vehicle Cash Collateral Account (the "Account") established by the Debtor.  Said Account shall be opened at a Bank with which Debtor presently has no banking relationship or borrowing relationship.  Debtor shall provide an accounting to DCSNA with regard to said Account upon demand by DCSNA.

ii.      Within one (1) banking day of Debtor's receipt of proceeds from the sale of a vehicle, Debtor shall either deliver to DCSNA's on-site representative or overnight mail to DCSNA's

Midwest Business Center office located in Lisle, Illinois a cashier's

check in an amount equal to (a) the amount financed on said

vehicle, or (b) if no amount has been financed on said vehicle, 80%

of the amount for which the vehicle is sold by Debtor, net of

salesmen's commissions, sales taxes and title expenses. However,

if Debtor does not receive proceeds from the sale of the vehicle by

the fourteenth (14th) banking day following the sale of said

vehicle, Debtor shall nevertheless deliver to DCSNA's on-site

representative or overnight mail to the Midwest Business Center of

DCSNA, a cashier's check in an amount equal to the amount due to

DCSNA as set forth above. Only after DCSNA is paid the amount

due to DCSNA as set forth herein, may Debtor withdraw its share

of the proceeds from the sale of that particular vehicle from the

Account.

iii.     If Debtor accepts a trade-in as part of the sale of

such a vehicle, DCSNA shall be granted a lien pursuant to 11

U.S.C. § 364(c) and 11 U.S.C. § 507(b) on any such trade-in

vehicle, and, at DCSNA's option, DCSNA may finance any trade-

in vehicle, if requested to do so by debtor. Debtor shall deliver the

title to said trade-in vehicle to DCSNA prior to DCSNA financing.

iv.     If Debtor accepts a trade-in in total or partial

consideration of the sale of such a vehicle, Debtor shall pay off any

lien on the "trade-in vehicle" within two (2) business days of

acceptance of the trade-in vehicle, and shall, within three (3) business days of payoff, submit proof to DCSNA that the lien on the trade-in vehicle has been paid off.

v.      Debtor shall not sell any vehicle for less than the financed amount without the prior written consent of DCSNA. If Debtor sells a floored vehicle for less than the financed amount, DCSNA shall receive all proceeds of the sale, in kind, and Debtor shall, within two (2) banking days of the sale of such a vehicle, pay DCSNA the difference between the amount financed on the vehicle and the proceeds of sale.

vi.     Debtor shall not, without the prior written consent of DCSNA, give a credit on a retail installment contract or a retail lease for a trade-in vehicle which credit exceeds the NADA Gold Book wholesale value of said vehicle or the value of any firm bid from a wholesaler on said trade-in vehicle, whichever is greater.

B.      FLEET SALES, DEALER TRADES/SALES AND/OR AUTO BROKER SALES

With regard to fleet sales, dealer trades/sales and/or auto broker sales, Debtor shall instruct the parties acquiring vehicles from Debtor to make payment by check or checks jointly payable to Debtor and DCSNA. Debtor shall then endorse said checks and deliver said checks, in kind, to DCSNA. DCSNA shall then issue a check to Debtor for Debtor's share of the proceeds of sale, if any.

Debtor shall not enter into any fleet sales or dealer trade/sales or auto broker sales without DCSNA's prior written consent.

C.    WHOLESALE OR AUCTION SALES

Debtor shall not wholesale or sell at auction any motor vehicles, including but not limited to, motor vehicles on which DCSNA has a lien, without DCSNA's prior express written consent.  However, Debtor may sell trade-in vehicles received by Debtor in connection with post-petition vehicle sales, at auction or through a wholesaler, provided that DCSNA has not made a specific advance in connection said vehicles and provided that Debtor complies with the following portions of this paragraph.  In the event Debtor elects to sell vehicles on a wholesale basis or at auction, with DCSNA's consent, Debtor shall instruct the parties acquiring the vehicles from Debtor to make payment by check or checks jointly payable to Debtor and DCSNA.  Debtor shall then endorse said checks and deliver said checks, in kind, to DCSNA.  DCSNA shall then issue a check to Debtor for Debtor's share of the proceeds of sale, if any, after satisfaction of DCSNA's liens on said vehicles as provided in paragraph 2(A) above, and after cure of any defaults to DCSNA, if defaults exist.

D.    FINANCING OF VEHICLES IN WHICH DCSNA DOES NOT RETAIN AN EXISTING INTEREST

At DCSNA's option, DCSNA may advance funds to Debtor and secure said advances by taking a security interest in any new or used vehicles in which DCSNA does not retain an existing security interest.  Upon the sale of a vehicle securing said advance, Debtor shall make payment to DCSNA as provided

in paragraph 2(A) above. With regard to all such advances by DCSNA, Debtor

shall execute a standard DCSNA form Note and Security Agreement, and shall

deliver the original title (pink slip) to DCSNA.

E.    SALE OF AUTOMOTIVE PARTS

Upon the sale of automotive parts, Debtor is hereby authorized to

use that portion of DCSNA's cash collateral which represents the difference

between the sales price of said parts and the wholesale cost of the parts, on the

following terms and conditions:

i.    Within five (5) days of execution of this Stipulation by

Debtor, Debtor shall provide DCSNA with an inventory of all of Debtor's

automotive parts. As automotive parts are sold over the counter or sold in

connection with Debtor's service or repair of customers' motor vehicles,

Debtor shall maintain a ledger, setting forth, with regard to each part, the

date sold, a description of the part, and the wholesale cost of the part.

ii.    Beginning the first Friday after the execution of this

Stipulation, and continuing on each Friday during this Stipulation, Debtor

shall pay to DCSNA, in the form of a cashier's check, an amount equal to

the wholesale cost of all of said automotive parts sold for the previous

seven-day period, less the cost of any replenishment of parts inventory

which is physically received by Debtor during the prior seven-day period,

and which are free and clear of any liens or encumbrances.

iii.    Each Friday, Debtor shall deliver a copy of its parts ledger,

showing parts sold during the previous seven days, along with Debtor's

cashier's check in payment of all parts sold and not replaced.

iv.    During the term of this Stipulation, Debtor shall not sell

any automotive parts in bulk, or on a wholesale basis, without DCSNA's

prior written consent.  If automotive parts are sold in bulk, or on a

wholesale basis, Debtor shall instruct purchasers to make payment in the

form of a check payable to DCSNA and Debtor.  Within two (2) banking

days of receipt of proceeds of such a sale by Debtor, Debtor shall endorse

and deliver said proceeds check to DCSNA for collection.  Upon

collection of the check DCSNA shall issue its check to Debtor for an

amount equal to the sale price of the parts, less the wholesale acquisition

cost of the parts by Debtor.

F.    CHATTEL PAPER

DCSNA's purchase of chattel paper from Debtor shall continue to

be governed by the pre-petition agreements between DCSNA and Debtor.

### Sale Track

3.    In order to provide DCSNA with adequate protection of its interests during the

period the assets are offered for sale by Debtor, the Debtor shall market its assets for sale within

the following time periods:

a.    On or before ___12/10/04___, Debtor shall obtain a signed

Buy-Sell Agreement for the purchase of all or substantially all of Debtor's assets, including

without limitation vehicle inventory, parts inventory, furniture, fixtures and equipment, and

Debtor's general intangibles (*i.e.*, Debtor's goodwill or "Blue Sky" and its rights in its dealership

franchise) (the "Assets");

      b.    On or before ___1/6/05___, Debtor shall obtain an

order from the Court approving the sale of the Assets free and clear of all liens, claims, and

encumbrances with all valid liens and encumbrances (including DCSNA's) to attach the proceeds;

      c.    Debtor (and the prospective purchaser) shall close the sale of the Assets on

or before ___1/18/05___; and

      d.    If Debtor fails to comply with the above-listed time constraints, it shall be

deemed in default of this Order.

*the diminution in value of DCSNA's collateral as of the Petition Date, as a result of Debtor's use of*

### General Provisions

4.    As adequate protection for cash collateral used by Debtor hereunder in which

DCSNA has an interest, DCSNA is hereby granted (i) liens and security interests in all post-

petition assets of Debtor, (ii) liens and security interests junior to properly perfected liens and

security interests in all pre-petition assets of the Debtor, and (iii) claims entitled to priority over

any and all administrative expense claims of the kind specified in sections 503(b) or 507(b) of

the Bankruptcy Code except that such claim shall be subject to all costs and expenses permitted

under 28 U.S.C. § 1930.  Said liens and security interests shall be valid, perfected, enforceable

and effective as of the Petition Date without any further action by Debtor or DCSNA, and

without the execution, filing and recording of any documents evidencing the same which may

otherwise be required under federal or state law in any jurisdiction or the taking of any other

action to validate or perfect the security interests and liens granted to DCSNA in this order.

5.    Neither Debtor nor Debtor's principals shall file or allow to be filed a Motion

under section 364(d) of the Bankruptcy Code or other applicable law, seeking the obtaining of

credit or incurring of debt secured by a senior or equal lien on DCSNA's collateral. However,

nothing herein shall be construed to prohibit Debtor from obtaining credit or the incurring of debt

secured by a lien junior to that of DCSNA upon DCSNA's collateral.

6.      Debtor shall maintain insurance on DCSNA's collateral as required by the terms

and conditions of the various security documents between DCSNA and Debtor.

7.      DCSNA is authorized to immediately conduct physical and book audits of

Debtor's operation at any time and Debtor shall allow DCSNA personnel to be on the premises at

all reasonable times and allow DCSNA personnel full reasonable access to all dealership

computers, books and records, including, but not limited to, all reports of sale books, cash entry

journals, deal jackets, and all banking records. DCSNA is hereby authorized to maintain a

"keeper" at the Debtor's location to, among other things, prevent out-of-trust disposition of

DCSNA's Collateral, to monitor DCSNA's Collateral, and to collect proceeds, in kind, if

DCSNA so elects.

8.      Debtor shall provide DCSNA and counsel for DCSNA with copies of all financial

and operating reports provided to the U.S. Trustee, at or about the time said reports are provided

to the U.S. Trustee. Debtor shall also provide DCSNA all regular financial statements prepared

in the ordinary course of Debtor's business.

9.      On or before December 15, 2004, and continuing on the fifteenth (15th) day of

each and every month thereafter, Debtor shall provide DCSNA with a financial statement, in a

form satisfactory to DCSNA, which accurately reflects the financial condition of Debtor for the

prior calendar month.

### Default and Remedies Upon Default

10.    Debtor shall be deemed to be in default hereunder if Debtor fails to comply with any of the terms and conditions set forth in paragraphs 1 through 15, above.

11.    In the event of any default hereunder, counsel for DCSNA shall notify, via fax, counsel for Debtor, at (312) 939-1742, and Debtor, at (708) 484-4177 Attn: D.J. Jeffers, of the default;

   a.    If said default is not cured within one (1) day after said Notice Debtor's use of cash collateral shall be suspended forthwith; and

   b.    **If said default is not cured within three (3) business days after said Notice, DCSNA may file and serve Debtor and counsel for Debtor, via fax, with a Declaration of Default** ~~and a proposed ex parte~~ **Order for Relief** ~~from the Automatic Stay~~**.  Debtor shall have three (3) business days from the date counsel for Debtor is served, via fax, with the Declaration of Default, in which to file and serve counsel for DCSNA, via fax, with a Declaration to the effect that Debtor was not in default or that Debtor cured the default within three (3) days of service of Notice of Default.  Said Declaration shall include documentary evidence, establishing or tending to establish that Debtor was not in default, or that Debtor cured the default within** ~~one (1)~~ three (3) **day** s **of service of the Notice of Default.  ~~If Debtor fails to file such a Declaration, the Court shall sign the~~** ~~ex parte~~ **~~Order for Relief from Stay without further Notice or~~** Upon failure of Debtor to comply with any **~~Court proceedings.  If Debtor does file a Declaration to the effect that Debtor~~** of the foregoing provisions of this paragraph 11 **~~was not in default or that Debtor cured the default within a timely fashion,~~** DCSNA may ~~~~ seek s relief from the Automatic Stay on **~~then there shall be a hearing on twenty four (24) hour notice.  At such~~** twenty four (24) hour notice. **~~hearing, relief from the Automatic Stay shall be granted to DCSNA unless~~**

a hearing for

2432805

~~Debtor establishes that it was not in default or that Debtor cured the default within one (1) day of service, via fax, of the declaration of default as provided above.~~ 

### Final Hearing

12.  A final hearing will be held on _January 6_, 20_05_ at _10:00_ a.m. in

Courtroom _744_ of the above-entitled Court to consider the relief requested by Debtor. Any

opposition to the motion must be in writing, filed with the Court and served via personal

delivery, facsimile or e-mail upon counsel for the Debtor, the Office of the United States Trustee,

counsel for DCSNA, and on the Official Committee of Unsecured Creditors or its counsel, or if

no Committee has been appointed, the twenty largest creditors, on or before _January_

_3_, 20_05_ at _4:30 p.m._ ~~Any reply to the opposition must be filed and served on the aforesaid parties via personal delivery, facsimile or e-mail on or before _____ ____ 20__ at _____.~~

**Stipulated and Agreed to by:**

Suburban Dodge of Berwyn, Inc. d/b/a
Suburban Dodge-Isuzu-Suzuki

_____
One of its Attorneys

Michael L. Gesas, #06186924
David A. Golin, #06180517
dgolin@gpgglaw.com
Gesas, Pilati, Gesas & Golin, Ltd.
53 W. Jackson Blvd., #528
Chicago, IL 60604
(312) 726-3100
(312) 427-6666 (fax)

Attorneys for Suburban Dodge of Berwyn,
Inc. d/b/a Suburban Dodge-Izuzu-Suzuki,
debtor and debtor in possession

DaimlerChrysler Services North America
LLC

_____
One of its Attorneys

Barry A. Chatz, #06196639
bachatz@arnstein.com
Arnstein & Lehr
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
(312) 876-6670
(312) 876-0228 (fax)

Francis X. Buckley, Jr., #06185143
Mark V. Bossi, #06197380
mbossi@thompsoncoburn.com
Brian W. Hockett, #06281854
bhockett@thompsoncoburn.com
Thompson Coburn LLP
One U.S. Bank Plaza
St. Louis, MO 63101
(314) 552-6000
(314) 552-7015 (fax)

Attorneys for DaimlerChrysler Services
North America LLC

**It is so Ordered.**

Dated:  __11/24/04__

_____
Hon. Eugene R. Wedoff
United States Bankruptcy Judge

2432805                                     - 15 -

**Suburban Dodge**
**Estimated Cash Flow**

| | | | | |
|---|---|---:|---|---:|
| **Revenues from Sales:** | | | | |
| Vehicle Sales, including Service Contracts & Finance | $ | 1,183,000 | $ | 1,183,000 |
| Parts & Service Sales, including collections of prior Accounts Receivables | $ | 192,000 | $ | 192,000 |
| Collections of Sales Tax and License and Title Fees | $ | 70,000 | $ | 70,000 |
| **Expenditures Directly Related to Sales:** | | | | |
| Cost of Vehicles Sold, Service Contracts & Finance Chargebacks | $ | (1,077,000) | $ | (1,077,000) |
| Cost of Parts Sold and Related Expenses | $ | (106,000) | $ | (106,000) |
| Remittance of Sales Taxes, both Vehicle and Parts and Service | $ | (65,000) | $ | (65,000) |
| Remittance of License and Title Fees | $ | (5,000) | $ | (5,000) |
| | | | | |
| **Net Cash From Sales:** | $ | 192,000 | $ | 192,000 |
| | | | | |
| **Other Expenses:** | | | | |
| Compensation - Salesmen | $ | (21,000) | $ | (21,000) |
| Delivery Expense | $ | (525) | $ | (525) |
| Policy Work - Vehicles | $ | (790) | $ | (790) |
| Salaries - Owners | $ | - | $ | - |
| Salaries - Supervision | $ | (23,500) | $ | (23,500) |
| Salaries - Clerical | $ | (10,500) | $ | (10,500) |
| Other Salaries | $ | (15,000) | $ | (15,000) |
| Absentee Compensation | $ | (3,200) | $ | (3,200) |
| Taxes - Payroll | $ | (7,800) | $ | (7,800) |
| Employee Health Insurance | $ | (6,000) | $ | (6,000) |
| Work Comp Insurance | $ | (5,300) | $ | (5,300) |
| Union Welfare & Pension | $ | (11,400) | $ | (11,400) |
| Used Vehicle Maintenance | $ | - | $ | - |
| Company Vehicle Expense | $ | (3,000) | $ | (3,000) |
| Office Supplies | $ | (1,400) | $ | (1,400) |
| Other Supplies | $ | (2,500) | $ | (2,500) |
| Advertising | $ | (6,000) | $ | (6,000) |
| Contributions | $ | - | $ | - |
| Policy Work - Parts & Service, NSF Checks | $ | (3,000) | $ | (3,000) |
| Data Processing | $ | (5,000) | $ | (5,000) |
| Business Travel - Meals, Gas, Airline, Lodging | $ | (600) | $ | (600) |
| Memberships - Publications | $ | - | $ | - |
| Legal & Audit | $ | - | $ | - |
| Telephone | $ | (3,000) | $ | (3,000) |
| Training Expenses | $ | (1,050) | $ | (1,050) |
| Interest | $ | - | $ | - |
| Miscellaneous | $ | (900) | $ | (900) |
| Rent | $ | - | $ | - |
| Amortization & Depreciation | $ | - | $ | - |
| Repairs to Real Estate | $ | (1,000) | $ | (1,000) |
| Insurance - Building and Vehicles | $ | (15,000) | $ | (15,000) |
| Utilities | $ | (6,500) | $ | (6,500) |
| Equipment Lease Payments | $ | (3,100) | $ | (3,100) |
| Taxes - Other | $ | - | $ | - |
| Repairs to Equipment | $ | (3,000) | $ | (3,000) |
| Depreciation - Equipment | $ | - | $ | - |
| Equipment Rental | $ | - | $ | - |
| | | | | |
| Other Miscellaneous Income - Doc Fees, Dealer Trades, Etc. | $ | 2,750 | $ | 2,750 |
| | | | | |
| **Net Anticipated Cash Flow** | $ | 34,685 | $ | 34,685 |

**EXHIBIT**

*A*

TOTAL P.29

## SERVICE LIST
### *In re Suburban Dodge of Berwyn, Inc. d/b/a Suburban Dodge-Isuzu-Suzuki, Debtor*
### No. 04 B 42931

Stephen G. Wolfe
Office of the United States Trustee
227 West Monroe Street, Suite 3350
Chicago, IL 60606
*Counsel for United States Trustee*
Fax: (312) 886-5794

Barry A. Chatz
Arnstein & Lehr LLP
120 South Riverside Plaza, Suite 1200
Chicago, IL 60606-3910
*Counsel for Daimler Chrysler Services*
  *North America LLC*
Fax: (312) 876-0288

Mark V. Bossi
Brian Hockett
Thompson Coburn LLP
One U.S. Bank Plaza
St. Louis, MO 63101
*Counsel for Daimler Chrysler Services*
  *North America LLC*
Fax: (314) 552-7015

Kathleen Field Orr
Kathleen Field Orr & Associates
One South Wacker Drive, Suite 1990
Chicago, IL 60606
*Counsel for Village of Berwyn*
Fax: (312) 382-2124

Jeremy M. Downs
Goldberg Kohn Bell Black
  Rosenbloom & Moritz, Ltd.
55 East Monroe Street, Suite 3700
Chicago, IL 60603
*Counsel for Berwyn Development*
  *Corporation*
Fax: (312) 332-2196

Benjamin L. Schneider
Quarles & Brady, LLC
500 West Madison Street, Suite 3700
Chicago, IL 60661
*Counsel for Arena Auto Auction*
Fax: (312) 715-5155

District Counsel for Internal Revenue
Service
200 W. Adams St., Suite 2300
Chicago, IL 60606
Fax: (312) 886-9244

Suburban Dodge of Berwyn, Inc.
7050 West Ogden Avenue
Berwyn, IL 60402
Fax: (708) 484-4177

## TWENTY LARGEST CREDITORS

*In re Suburban Dodge of Berwyn, Inc. d/b/a Suburban Dodge-Isuzu-Suzuki, Debtor*

**No. 04 B 42931**

ADP Commercial Leasing
P.O. Box 34656
Newark, NJ 07189

Cook County Department of Revenue
P.O. Box 94420
Chicago, IL 60690-4420

GMAC
15303 94th Avenue
Orland Park, IL 60462

Gabriel Environmental
1421 N. Elston Avenue
Chicago, IL 60622

Great Bank
234 South Randall Road
Algonquin, IL 60102

Greater Chicago Auto Auction
20401 Cox Avenue
Matteson, IL 60443

James J. Roche & Associates
Attorneys at Law
642 North Dearborn Street
Chicago, IL 60610

Liberty Mutual Insurance Group
75 Remittance Drive
Suite 1837
Chicago, IL 60675-1837

Local 701
500 Plainfield
Countryside, IL 60525

Lyndon Properties & The Plan
& Prizm
1099 18th Street
Denver, CO 80202-1940

MC2 Customs Alloy, Inc.
P.O. Box 72971
Los Angeles, CA 90084

Man Marketing, Inc.
765 Kimberly Drive
Carol Stream, IL 60188

McHenry Insurance Services
904 S. Rt. 31
McHenry, IL 60051

National Credit Center, Inc.
2605 Camino Del Rio South
Suite 400
San Diego, CA  92108

Oak Agency
340 West Butterfield Road
Elmhurst, IL 60126

Perfection Auto
811 Garfield
Oak Park, IL 60304

David B. Sosin
Sosin, Lawler, & Arnold, LLC
11800 S. 75th Avenue
Suite 300
Palos Heights, IL 60463

Suburban Auto
3143 South Austin Boulevard
Suite 1300
Chicago, IL 60804

## TWENTY LARGEST CREDITORS

*In re Suburban Dodge of Berwyn, Inc. d/b/a Suburban Dodge-Isuzu-Suzuki, Debtor*

**No. 04 B 42931**

U.S. Bank
P.O. Box 790408
St. Louis, MO 63179-0408


Weis & Dubrock
One North LaSalle Street
Suite 1300
Chicago, IL 60602